UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MARLEA ADLEY BRIGGS,<br>APPELLANT | CIVIL ACTION NO. 17-1080 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| TODD S. JOHNS, TRUSTEE,<br>APPELLEE | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is an appeal filed by Debtor Marlea Adley Briggs ("Briggs") from the Bankruptcy Court's May 15, 2017 order denying confirmation of her first proposed plan and the Bankruptcy Court's August 17, 2017 order overruling her objection and confirming a plan that she opposed. [Record Document 1]. The Trustee, Todd S. Johns ("Trustee"), opposes the appeal and asks this Court to affirm the Bankruptcy Court's orders. [Record Document 9]. For the reasons assigned herein, the orders of the Bankruptcy Court [Bankr. Documents 29 and 49][1] are hereby **REVERSED**, and this matter is **REMANDED** for further proceedings consistent with this Memorandum Ruling.

---

[1] "Bankr. Document" refers to entries contained in the docket in the underlying proceeding, *In re Briggs*, Ch. 13 Case No. 16-12298 (Bankr. W.D. La. petition filed Dec. 31, 2016). If this Court has referred to a bankruptcy document that is not contained in the record on appeal, the Court hereby takes judicial notice of the document. *See ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. Unit B July 20, 1981) ("A court may . . . take judicial notice of [the] records . . . of inferior courts.").

1

## BACKGROUND

On December 31, 2016, Briggs filed for Chapter 13 bankruptcy. [Bankr. Document 1]. Briggs lives with her husband, and her income is above the median income for a two-person household in Louisiana. [Bankr. Document 29 at 3, 6]. Briggs's first plan proposed to pay $9,500 to her unsecured creditors. [*Id.* at 19]. After Briggs resolved several objections to the Trustee's satisfaction, he submitted her plan to the Bankruptcy Court for confirmation. [Record Document 1-2 at 3]. Rather than approve the plan in light of the absence of objections, the Bankruptcy Court set a confirmation hearing. [Bankr. Document 18]. The Bankruptcy Court then denied confirmation on the basis of its *sua sponte* objection to Briggs's calculation of her disposable income. [Bankr. Document 29]. When calculating her disposable income on Form 122C-2, Briggs deducted $913.00 for mortgage or rent expenses. [Bankr. Document 1 at 56]. This amount is the IRS Local Standard for rent for a two-person household in Bossier Parish, Louisiana. [Bankr. Document 29 at 15]. Reasoning that Briggs could not deduct a rental expense that she did not incur, the Bankruptcy Court held that she was entitled to deduct $438.20 only—the actual amount of her monthly mortgage payments. [*Id.* at 15–19].

To comply with the Bankruptcy Court's ruling, Briggs filed an amended plan that limited her mortgage deduction to the value of her mortgage payments, thereby increasing the amount that she would pay her unsecured creditors. [Bankr. Documents 37 at 2 and 43]. She then objected to confirmation of this plan. [Bankr. Document 46]. The Bankruptcy Court overruled the objection and confirmed the plan. [Bankr. Document 49]. This appeal followed. [Record Document 1].

## JURISDICTION

District courts have appellate jurisdiction over final judgments, orders, and decrees issued by bankruptcy courts. 28 U.S.C. § 158(a)(1) (2012). A confirmation order is a final judgment for purposes of these appeals. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015). Because the Bankruptcy Court confirmed the plan to which Briggs objected, [Record Document 49], this Court has jurisdiction over her appeal.

## STANDARD OF REVIEW

In reviewing a decision by a bankruptcy court, a district court functions as an appellate court, applying the same standards of review applied by federal appellate courts. *In re Webb (Webb v. Reserve Life Ins. Co.)*, 954 F.2d 1102, 1103–04 (5th Cir. 1992). Thus, a bankruptcy court's discretionary decisions are reviewed under an abuse of discretion standard, findings of fact are reviewed for clear error, and legal conclusions are reviewed de novo. *In re ASARCO, L.L.C. (ASARCO v. Barclays Capital, Inc.)*, 702 F.3d 250, 257 (5th Cir. 2012).

## OPINION BELOW AND THE PARTIES' ARGUMENTS

A central issue in this case is whether a bankruptcy court has the authority to object *sua sponte* to a proposed plan's calculation of a Chapter 13 debtor's disposable income. The Supreme Court has noted that the purpose of the disposable income calculation is to "help ensure that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011) (citing H.R. Rep. No. 109-31, pt. 1, at 2 (2005)). On the basis of this policy and a bankruptcy court's independent duty to assure itself of debtors' good faith, the Bankruptcy Court concluded not only that it could refuse to confirm a plan relying on an incorrect

disposable income calculation, but that it must do so. [Bankr. Document 29 at 23–24]. The Bankruptcy Court gave three reasons for reaching this result. [*Id.* at 23–28]. First, the Bankruptcy Court held that the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), stands for the proposition that a bankruptcy court has an "independent duty to review all budgets and Chapter 13 plans." [Bankr. Document 29 at 24]. Second, because confirmed plans bind both debtors and creditors, the Bankruptcy Court asserted that it had a duty to correct errors before confirmation. [*Id.* at 25]. Relatedly, the Bankruptcy Court pointed out that when it disagrees with the Trustee over the interpretation of the Bankruptcy Code (the "Code"), there is no practical means to resolve this dispute other than *sua sponte* objections, particularly in light of the tendency of Chapter 13 creditors in this district to limit their involvement to filing proofs of claim. [*Id.* at 26–27]. The result is to make trustees the "final arbiter[s]" of Chapter 13 plans—a result that in the Bankruptcy Court's view is undesirable because the current trustee in the Western District of Louisiana is relatively inexperienced as a trustee. [*Id.*]. Finally, the Bankruptcy Court rejected a limited view of its power that would relegate it to being "simply a confirmation order signing machine." [*Id.* at 27].

Briggs raises four claims of error on appeal, two of which relate to a threshold issue of the Bankruptcy Court's inherent authority. [Record Document 8 at 3]. First, Briggs asks this Court to review whether *Espinosa* authorized the Bankruptcy Court's *sua sponte* objection to her disposable income calculation. [*Id.*]. Second, she asks this Court to determine whether the Code prevents anyone other than a Chapter 13 trustee and unsecured creditors from objecting to a debtor's disposable income calculation. [*Id.*]. Briggs believes both questions should be answered

4

in the negative. Specifically, she contends that the portion of *Espinosa* on which the Bankruptcy Court relied is dicta and, in any event, applies only to a particular subset of Code provisions—those that are "self-executing." [*Id.* at 23–25]. Because the provisions related to the disposable income calculation are not self-executing, she argues that a bankruptcy court cannot independently object to plans that improperly calculate a debtor's disposable income. [*Id.* at 26–27]. She then disputes the Bankruptcy Court's characterization of its objection as an exercise of its authority to police debtors' good faith because "[g]ood faith is not an economic test" and because the Bankruptcy Court did not make the findings required to reject a plan for a lack of good faith. [*Id.* at 28]. Briggs's remaining two issues concern the correctness of her preferred disposable income calculation. [*Id.* at 3].[2]

In his brief, the Trustee argues that the Bankruptcy Court's reading of *Espinosa* is correct and points to several pre-*Espinosa* cases that he interprets as holding that a bankruptcy court has independent authority to object to any provision of a proposed Chapter 13 plan. [Record Document 10 at 22–23]. In particular, he argues that despite the presence of the "self-executing" modifier in *Espinosa*, the holding of that case applies to every requirement that the Code imposes on a debtor's plan. [*Id.* at 24]. Briggs's reply brief distinguishes the cases cited by the Trustee by pointing out that none of them expressly hold that the disposable income calculation is subject to *sua sponte* objections. [Record Document 13 at 9–10].

---

[2] Because this Court resolves the instant appeal on the basis of the threshold issue of the Bankruptcy Court's authority to object to a proposed plan *sua sponte*, this ruling will not address Briggs's substantive points of error regarding the correct housing deduction.

# RELEVANT PROVISIONS OF CHAPTER 13

This Court's analysis begins with the language of the Code. The filing of a bankruptcy petition creates a bankruptcy estate comprising all of a debtor's legal and equitable interests in property unless specifically excluded by statute. 11 U.S.C. § 541(a) (2012). In a Chapter 13 proceeding the estate also includes property and earnings acquired by the debtor "after the commencement of the case but before the case is closed, dismissed, or converted." *Id.* § 1306(a)(1)–(2). Once a petition is filed, a debtor proposes a plan and submits it to the bankruptcy court for confirmation. *Id.* §§ 1321, 1325.

Under 11 U.S.C. § 1325(b)(1),

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

*Id.* § 1325(b)(1); *see Hamilton v. Lanning*, 560 U.S. 505, 509 (2010). Essentially, if the trustee or an unsecured creditor objects to confirmation, the bankruptcy court is required to independently evaluate the debtor's calculation of her disposable income unless she repays the debt in full. *Lanning*, 560 U.S. at 509.

"Disposable income" is the "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended" for the debtor's maintenance, for certain charitable contributions, and for business purposes. *Id.* at 510 (citing 11 U.S.C.

§ 1325(b)(2)(A)(i)–(ii)). "Current monthly income" is the debtor's average monthly income during a "look-back" period—typically the six months preceding the filing of the bankruptcy petition. *Id.* (citing 11 U.S.C. § 101(10A)(A)(I) (2012)). A bankruptcy court may also consider known or virtually certain upcoming changes in a debtor's monthly income or expenses. *Id.* at 513.

When defining the "amounts reasonably necessary to be expended," the Code distinguishes between Chapter 13 debtors whose income is below their states' median income and those whose income is above that median. 11 U.S.C. § 1325(b)(2)–(3). For above-median-income debtors, such as Briggs, the "amounts reasonably necessary to be expended" are calculated using a "means test" in accordance with 11 U.S.C. § 707(b)(2)(A)–(B). *Id.* § 1325(b)(3). Section 707(b)(2)(A)–(B) identifies specific categories of expenses to be deducted. *Id.* § 707(b)(2)(A)–(B). Of particular relevance to the present case, the allowable deductions for common expenses such as housing, food, and clothing are the "debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." *Id.* § 707(b)(2)(A)(ii)(I).

In addition to complying with the § 1325(b) requirement that all of a debtor's disposable income be used to repay creditors, a proposed Chapter 13 plan must also satisfy a series of requirements under § 1325(a). These requirements include compliance with the "provisions of this chapter and with the other applicable provisions of this title," *id.* § 1325(a)(1), payment of court fees, *id.* § 1325(a)(2), filing of tax returns, *id.* § 1325(a)(9), and proper treatment of secured

creditors and beneficiaries of domestic support obligations, *id.* § 1325(a)(5), (8). The value of the property distributed to each unsecured creditor under the proposed Chapter 13 plan must not be less than what the creditors would receive under a Chapter 7 liquidation. *Id.* § 1325(a)(4). The plan must be feasible, i.e., the debtor must be able to make the required payments. *Id.* § 1325(a)(6). Finally, and perhaps most importantly, the bankruptcy petition and the proposed plan must be offered in good faith. *Id.* § 1325(a)(3), (7).

## *ESPINOSA* AND ITS APPLICATION

Because the proper interpretation of *Espinosa* is a central issue in this case, a somewhat detailed examination of that decision is called for. Francisco Espinosa ("Espinosa") had taken out four federally guaranteed student loans several years before he filed for a Chapter 13 bankruptcy. *Espinosa*, 559 U.S. at 264. Under §§ 523(a)(8) and 1328(a)(2) of the Code, student loans may not be discharged in Chapter 13 bankruptcy unless refusing to do so "would impose an undue hardship on the debtor." 11 U.S.C. §§ 523(a)(8), 1328(a)(2) (2012). Espinosa's plan proposed that he would pay the principal of the loans, but not the interest. *Espinosa*, 559 U.S. at 264. United Student Aid Funds ("United") received notice of the proposed plan and filed a proof of claim, but did not otherwise object. *Id.* at 265. The bankruptcy court then confirmed the plan without conducting an adversarial proceeding or finding that paying the interest would cause Espinosa undue hardship. *Id.* Espinosa complied with the terms of his plan, repaid the principal on the loans, and obtained a discharge of the interest. *Id.* at 265–66. Three years later, United sought to collect the unpaid interest, and Espinosa responded by asking the bankruptcy

court to enforce its discharge order. *Id.* at 266. United then moved to have the plan confirmation declared void under Rule 60(b)(4) of the Federal Rules of Civil Procedure. *Id.*

The central holding of *Espinosa* is clear. The Supreme Court noted that a Chapter 13 plan proposing to discharge student loans without an undue hardship finding violates the Code. *Id.* at 275–76. However, because the bankruptcy court's failure to make this finding did not deprive it of jurisdiction to discharge the student loan interest and because United's actual notice of the proceedings complied with due process, the Court held that Rule 60(b)(4) did not authorize relief from the discharge order. *Id.* at 271–72. The Court also rejected United's claim that the undoubted statutory violation that occurred rendered the confirmation order void. *Id.* at 273–76.

While this much is clear, what is less clear is the correct interpretation of the remainder of the opinion. In Part III of *Espinosa*, the Court stated that the "Code makes plain that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)." *Id.* at 277. While some authorities contend that the whole of Part III is dicta, *see, e.g.*, Keith Lundin, *Sewer Sponte II: The Dark Side of* Espinosa, Lundin on Chapter 13, https://www.lundinonchapter13.com/ (last visited Sept. 4, 2018), this Court believes that Part III still provides useful guidance. Under *Espinosa*, when a student loan debtor fails to seek a determination of undue hardship, bankruptcy courts may (indeed, must) object—even if no creditor does. *Espinosa*, 559 U.S. at 276–77. What *Espinosa* leaves uncertain is the extent to which a bankruptcy court must object *sua sponte* to provisions of the Code other than those concerning student loans.

In *Espinosa*, the Supreme Court repeatedly described the requirement of an undue hardship determination as "self-executing." *Id.* at 274–76. A self-executing provision of the Code is one that a bankruptcy court must enforce even if no creditor objects. *Espinosa*, 559 U.S. at 274–75. In the context of student loan debt, a debtor must "affirmatively secure[] a hardship determination" in order to obtain a discharge of student loans. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) (citing William L. Norton, Jr., *Bankruptcy Law and Practice* § 57:52). Thus, the characteristic of the Code's self-executing provisions is that they require a debtor to invoke a proceeding. *See In re Clarke (Clarke v. Paige)*, 266 B.R. 301, 306 (Bankr. E.D. Pa. 2001) ("Significantly, Congress has placed the burden upon the debtor, not the creditor, to bring an action to dispute the nondischargeability of an educational loan . . . ." (emphasis added)).

The use of the "self-executing" modifier suggests that the Supreme Court believed that other provisions of the Code are not self-executing and that Part III of its decision did not apply to those provisions. Thus, this Court holds that *Espinosa* requires a bankruptcy court to object *sua sponte* to terms in proposed Chapter 13 plans that violate self-executing provisions of the Code. In the absence of guidance from a higher court to the contrary, this Court further holds that objections on the basis of non-self-executing provisions must be made by a party that the Code authorizes to object.

This reading of *Espinosa* reflects the language of the Code. Under the Code, only a debtor may propose a Chapter 13 plan. 11 U.S.C. § 1321. This suggests an initial limitation on the Court's *sua sponte* authority. *See* Lundin, *supra*. Moreover, the broad reading of *Espinosa* favored by the Bankruptcy Court would rapidly become unworkable. Under *Espinosa*, a bankruptcy court

has an unfailing "obligation" to correct certain defects in proposed Chapter 13 plans. 559 U.S. at 277. The logical consequence, then, of the Bankruptcy Court's interpretation of *Espinosa* is to impose on bankruptcy judges a duty to ferret out <u>every</u> defect in <u>every</u> proposed plan. *See* Lundin, *supra*. Such a far-reaching obligation would effectively deprive Chapter 13 trustees of any role other than collecting and distributing estates' assets. Trustees have a duty to enforce the equitable division of a debtor's estate, and Congress has made it clear that a "[C]hapter 13 trustee 'is no mere disbursing agent.'" *In re Maddox*, 15 F.3d 1347, 1355 (5th Cir. 1994) (quoting S. Rep. No. 95-989, at 139). The Bankruptcy Court's interpretation of its authority under *Espinosa* thus usurps a function Congress has allotted to the Trustee.

Therefore, the Court holds that the Bankruptcy Court's interpretation of *Espinosa* as authorizing *sua sponte* objections to any provision of a proposed Chapter 13 plan is erroneous. However, because this Court also holds that *Espinosa* requires bankruptcy courts to object *sua sponte* to plan provisions that violate self-executing requirements of the Code, the Bankruptcy Court's ultimate conclusion may be affirmed if the disposable income calculation provision at issue is self-executing.

### SELF-EXECUTING AND NON-SELF-EXECUTING PROVISIONS

To determine whether § 1325(b)(1) is self-executing, the Court begins by comparing its language to that of § 523(a)(8). Under § 523(a)(8), "[a] discharge . . . does not discharge an individual debtor from any [student loan] debt . . . unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a). In contrast, under § 1325(b)(1), "[i]f the trustee or the holder

11

of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." *Id.* § 1325(b)(1). Both provisions contain a requirement that a specific determination be made before the bankruptcy court can take a specified action (either discharging student loan debt or confirming a Chapter 13 plan). These requirements are captured in the form of clauses introduced by the word "unless," which the Supreme Court has suggested gives rise to self-executing nature of § 523(a)(8). *Espinosa*, 559 U.S. at 274 n.11. However, § 1325(b)(1) contains a subordinate clause that has no counterpart in § 523(a)(8) and that assigns a specific role to the trustee and unsecured creditors. The presence of this additional clause assigning a role to persons other than the debtor and the bankruptcy court distinguishes the two provisions. In the absence of any additional indication that § 1325(b)(1) requires a debtor to initiate a proceeding, this Court holds that § 1325(b)(1) is not self-executing.

Persuasive authority supports this conclusion. Prior to *Espinosa*, courts consistently held that objections under § 1325(b) may not be raised *sua sponte*; rather, they must be raised by the persons authorized to do so in the Code: trustees and unsecured creditors. *See, e.g.*, *In re Davis*, 68 B.R. 205, 209–10 (Bankr. S.D. Ohio 1986). Post-*Espinosa*, at least one bankruptcy court has expressly held that bankruptcy courts cannot object *sua sponte* to improper disposable income calculations. *In re Cromwell*, 483 B.R. 276, 280 n.12 (Bankr. D. Mass. 2012). This authority thus lends credence to this Court's conclusion that § 1325(b)(1) is not self-executing.

Of the cases cited by the Trustee to demonstrate that bankruptcy courts may object to plan provisions *sua sponte*, none address § 1325(b)(1). *See In re Warren (Fid. & Cas. Co. of N.Y. v. Warren)*, 89 B.R. 87, 90 (B.A.P. 9th Cir. 1988) (citing *In re Hale*, 65 B.R. 893, 897 (Bankr. S.D. Ga. 1986); *In re Meltzer*, 11 B.R. 624, 626 (Bankr. E.D.N.Y. 1981)) (considering § 1325(a)(3)); *Austin v. Bankowski*, 519 B.R. 559, 563 (D. Mass. 2014) (considering § 1325(a)(5)–(6)); *In re Vincente*, 257 B.R. 168, 177–78 (Bankr. E.D. Pa. 2001) (considering § 1325(a)(3), (5)–(6))); *Beard v. U.S. Trustee*, 188 B.R. 220, 225 (W.D. La. 1995) (considering § 1325(a)(3)), *aff'd sub nom. In re Beard (Beard v. Davidson)*, 84 F.3d 431 (5th Cir. 1996) (per curiam) (unpublished); *In re Farmer*, 186 B.R. 781, 782 (Bankr. D.R.I. 1995) (considering § 1325(a)(3)). Even though these cases typically state that a "bankruptcy court must ensure that all of the Section 1325 requirements have been met," *Austin*, 519 B.R. at 563 (citing *Espinosa*, 559 U.S. at 278), in each case, the relevant provision being enforced is found in § 1325(a).[3] As a result, these cases do not illuminate the question of whether § 1325(b)(1) is self-executing.

---

[3] In *McCullough v. Brown (In re Brown)*, also cited by the Trustee, the Northern District of Illinois asserted that "[a]lthough no party objected to the proposed plan, the Bankruptcy Judge has an independent obligation to determine whether the plan fulfills the requirements for confirmation under Chapter 13." 162 B.R. 506, 508 n.3 (N.D. Ill. 1993) (citing *In re Christophe*, 151 B.R. 475, 476 (Bankr. N.D. Ill. 1993), *declined to follow on other grounds by Brown*, 162 B.R. 506)). That court then went on to deny confirmation on the basis of its conclusion that the proposed plans unfairly discriminated against non-student-loan creditors in violation of 11 U.S.C. § 1322(b)(1). The Trustee believes this supports the Bankruptcy Court's authority to object to a disposable income calculation *sua sponte*. However, an examination of the underlying bankruptcy court opinion reveals that while no creditor objected, the trustee did object. *In re Brown*, 152 B.R. 232, 232–33 (Bankr. N.D. Ill.), *rev'd sub nom. McCullough v. Brown*, 162 B.R. 506 (N.D. Ill. 1993). It appears that the district court in *Brown* used the term "party" to refer solely to creditors. Because there was an objection from the trustee, the *Brown* court's statement does not support the proposition that a bankruptcy court may object *sua sponte*.

This Court has located only a single case in which a court raised an objection to an improper disposable income calculation *sua sponte*. *In re Williams*, 394 B.R. 550, 573 (Bankr. D. Colo. 2008). In *In re Williams*, the trustee had objected to the plan on unrelated grounds. *Id.* at 562. Because § 1325(b)(1) triggers court scrutiny of a proposed plan "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan," the *Williams* court concluded that an objection by one of these parties to any plan provision obligates a bankruptcy court to review the disposable income calculation. *Id.* (emphasis added) (quoting 11 U.S.C. § 1325(b)(1)). For that reason, the court examined the debtor's disposable income *sua sponte* even though the trustee had not objected to that specific portion of the proposed plan. *Id.* at 562, 573. Although *Williams* appears to authorize scrutiny of plan terms to which no party has objected, the case in fact supports this Court's holding that § 1325(b)(1) is not self-executing because the *Williams* court reviewed the disposable income calculation only after the trustee had objected to confirmation.

Therefore, because *Espinosa* only authorizes *sua sponte* objections on the basis of self-executing provisions and because § 1325(b)(1) is not self-executing, the Bankruptcy Court could not object *sua sponte* based on the mere fact that it believed Briggs's proposed plan improperly calculated her disposable income.

## DUTY TO ENSURE COMPLIANCE WITH THE CODE

The Trustee implies that § 1325(a)(1) might justify the Bankruptcy Court's *sua sponte* objection. [Record Document 10 at 24]. Section 1325(a)(1) provides that a bankruptcy court may not confirm a plan that fails to "compl[y] with the provisions of this chapter and with the other

14

applicable provisions of this title." 11 U.S.C. § 1325(a)(1). This could be read to authorize the *sua sponte* enforcement of any applicable provision of the Code, but the Supreme Court's actual use of § 1325(a)(1) belies this argument. In *Espinosa*, the Supreme Court specifically pointed to a bankruptcy court's duty under § 1325(a)(1) to ensure that plans comply with the law as the mechanism allowing *sua sponte* objections to plans seeking to discharge student loans without the requisite undue hardship finding. 559 U.S. at 277. However, § 1325(a)(1) has no independent content; it is merely an enforcement mechanism for "other . . . provisions." 11 U.S.C. § 1325(a)(1). For this reason, in order to reach the conclusion that § 1325(a)(1) authorized *sua sponte* objections to a plan that violated § 523(a)(8)'s provision on the nondischargability of student loans without an undue hardship finding, the Supreme Court had to rely on its ruling in *Tennessee Student Assistance Corp. v. Hood* that § 523(a)(8) was self-executing. *Espinosa*, 559 U.S. at 277 (citing *Hood*, 541 U.S. at 450). Thus, under the logic of *Espinosa*, a *sua sponte* objection on the basis of § 1325(a)(1) is appropriate only if the provision to be enforced is itself self-executing. As discussed above, § 1325(b)(1) is not self-executing, and so § 1325(a)(1) does not provide a mechanism for a bankruptcy court to review a debtor's disposable income calculation *sua sponte*.

### DUTY TO ENSURE DEBTOR'S GOOD FAITH

The Bankruptcy Court offered an additional rationale for its ability to object *sua sponte*: the requirement under § 1325(a)(3) that a plan be proposed in good faith. [Bankr. Document 29 at 24]. A court may raise the issue of a debtor's good faith *sua sponte*. *In re Kirk*, 465 B.R. 300, 302 (Bankr. N.D. Ala. 2012); *see In re Warren*, 89 B.R. at 90 (citing *In re Hale*, 65 B.R. at 897; *In*

*re Meltzer*, 11 B.R. at 626); *In re Vincente*, 257 B.R. at 177–78; *Beard*, 188 B.R. at 225; *In re Farmer*, 186 B.R. at 782. However, the Bankruptcy Court appears to treat Briggs's allegedly improper disposable income calculation as a per se indication of a lack of good faith. This treatment is erroneous because good faith must be evaluated in light of the totality of the circumstances. *In re Chaffin*, 836 F.2d 215, 217 (5th Cir. 1988) (citing *Pub. Fin. Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983)). The Fifth Circuit has identified the factors to be examined in order to make a finding that a debtor is not in good faith:

> (1) the reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a creditor has objected to the plan.

*In re Stanley (Suggs v. Stanley)*, 224 F. App'x 343, 346 (5th Cir. 2007) (internal footnotes and quotation marks omitted). The Bankruptcy Court erred in not considering the extent to which Briggs's proposed plan reflected her ability to pay in light of the surrounding circumstances. Therefore, the appropriate course of action is to remand this matter to allow the Bankruptcy Court to properly determine whether Briggs proposed her plan in good faith.

This Court reaches no conclusion on the substantive question of whether Briggs properly calculated her disposable income. Some authority suggests that even a "strict mechanical application of the Means Test does not necessarily satisfy [d]ebtors' burden of demonstrating good faith in the proposal of their plans, including whether they are devoting sufficient income to their plan." *In re Edmunds*, 350 B.R. 636, 648 (Bankr. D.S.C. 2006). If Briggs can, in fact, pay

her unsecured creditors more than her original proposed plan required her to pay, the Bankruptcy Court may properly consider this factor but only in light of the totality of the circumstances.

## CONCLUSION

The Bankruptcy Court incorrectly concluded that it could object to Briggs's plan *sua sponte* on the basis that she improperly calculated her disposable income. Because the Bankruptcy Court lacked the authority to deny confirmation on this basis when neither the Trustee nor an unsecured creditor objected, it is irrelevant for present purposes whether Briggs's calculation was correct or incorrect. While the Bankruptcy Court can evaluate Briggs's good faith *sua sponte*, it may only deny confirmation on that basis if it applies the correct legal standard and makes the necessary factual findings, which it did not do in this case. Therefore, in light of the foregoing, **IT IS ORDERED** that the orders of the Bankruptcy Court denying confirmation of Briggs's first plan, overruling her objections to her second plan, and confirming the second plan [Bankr. Documents 29 and 49] are **REVERSED**. This matter is **REMANDED** to the Bankruptcy Court to allow it to properly evaluate Briggs's good faith in the first instance.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ____ day of _____, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE